**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEREK L. BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01256-TWP-TAB |
| | ) | |
| DAVIN NICHOLS, DAVID LACY, | ) | |
| ROBERT NUNEMACHER, JOE FARINOLLA[1], | ) | |
| Sheriff Deputy, and JAY D. RICH, Tipton County | ) | |
| Prosecutor, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,**
**GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DENYING**
**MOTIONS FOR SANCTIONS, AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment, (Dkt. 196), and two

Motions for Sanctions, (Dkt. 183, Dkt. 285), filed by *pro se* Plaintiff Derek L. Boyd ("Mr. Boyd").

Also before the Court is a Motion for Summary Judgment filed by Defendants Davin Nichols

("Officer Nichols[2]"), David Lacy ("Lacy"), and Robert Nunemacher ("Officer Nunemacher"),

(Dkt. 248), and a Motion for Summary Judgment filed by Defendants Joe Farinella ("Deputy

Farinella") and Jay D. Rich ("Mr. Rich"), (Dkt. 260), (collectively, "Defendants").  Mr. Boyd

initiated this action alleging that law enforcement officers searched his home subject to an invalid

warrant in 2017, that he was wrongly arrested and detained because of the search, and the

prosecution withheld evidence that would have revealed that the search and arrest lacked probable

---

[1] Mr. Boyd improperly identified Deputy "Farinolla" in his Complaint, (*see* Dkt. 18), and his name has appeared incorrectly on the docket since then.  The **Clerk is directed** to change Defendant's name on the docket from "Joe Farinolla" to "Joe Farinella."

[2] Defendant Nichols is currently a Captain with the Tipton Police Department; however, at the time of the circumstances leading to this Complaint, Defendant Nichols was an Officer with the Tipton Police Department (*see* Dkt. 213-1). For purposes of this Entry, the Court will refer to him as "Officer" Nichols.

cause.  For the reasons explained below, Defendants are entitled to judgment as a matter of law, Mr. Boyd's sanctions motions lack merit, and this matter must be dismissed.

## I.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Federal Rule of Civil Procedure. 56(a).  Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896

(7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and quotation marks omitted). However, it is also well established that *pro se* litigants are not excused from compliance with procedural rules. The Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.

Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law. *Feresu v. Trs. of Ind. Univ.*, 2017 U.S. Dist. LEXIS 66452, at \*18–19 (S.D. Ind. May 2, 2017) (citations and punctuation marks omitted).

## II. <u>FACTS</u>

### A.    <u>Response to Ki Pil Choi's Residence</u>

On February 14, 2017, Tipton County Communications Dispatch called law enforcement officers to the home of Ki Pil Choi ("Choi"). (Dkt. 196-1 at 3.) Tipton Police Department ("TPD") Officers Nichols and Nunemacher arrived and found Choi in distress, breathing heavily, and clutching his chest. *Id.* Choi told the officers that he had taken "ice," which Officer Nichols knew as a street name for methamphetamine. *Id.* at 4. Choi took the officers to his bedroom, where they found trace quantities of a white, powdery substance that proved to be methamphetamine following a field test. *Id.* at 4–5.

Officer Nichols visited Choi in the emergency room approximately 30–40 minutes after receiving the original dispatch and asked him where and from whom he obtained the methamphetamine he took that day. *Id.* at 5. Choi provided Officer Nichols, the following details. He purchased $80 worth of methamphetamine from Derek Boyd in Mr. Boyd's home at 444 North East Street, City of Tipton, Tipton County, Indiana. Mr. Boyd took Choi to his bedroom, where he removed a rock from a brown dresser, cut off a piece, weighed it on a scale, and gave it to Choi in exchange for his money. *See* Dkt. 168-1 at 18:7–19:4; Dkt. 196-1 at 4–6. Although Choi remained in distress even at the hospital, Officer Nichols judged that he was lucid, "tracking" his questions, and providing responsive answers. (Dkt. 168-1 at 18:10–15, 19:13–21, 23:15–18; Dkt. 196-1 at 6.)

Officer Nichols recognized 444 North East Street as Mr. Boyd's address because he had responded to a disturbance there in the past.  (Dkt. 168-1 at 21:2–9.)  Additionally, other TPD officers previously asked Officer Nichols to watch that residence "for drug activity." *Id.* at 21:22–25.

**B.**   **Search Warrant Application**

Officer Nichols applied for a search warrant.  He presented an affidavit to Tipton County Prosecutor Jay Rich, recounting his interactions with Choi, Choi's account of his transaction with Mr. Boyd, and the suspicion among TPD officers that Mr. Boyd was selling drugs from 444 North East Street.  (Dkt. 249-2 at 5–7.)  The affidavit concludes:

> Officer Nichols believes that probable cause exists to search the residence of Derek L. Boyd for the presence of controlled substances, namely methamphetamine, based on the *first hand, personal observations* of Ki Pil Choi, providing *intimate, specific details, recent in nature,* regarding Boyd's possession and distribution of methamphetamine located inside the residence, as well as other law enforcement information suggesting Boyd has been involved in said possession and distribution.

(Dkt. 249-2 at 7 (emphasis added).)

Officer Nichols sought a warrant to search 444 North East Street, and any "enclosed area and/or container anywhere on the premises," for "Methamphetamine in any form, records, paraphernalia and other indicia of manufacturing, use, or distribution of controlled substances, which constitutes contraband and evidence of an offense." *Id.* at 8.  Tipton County Circuit Judge Thomas Lett approved the warrant and signed two copies—one at 11:00 P.M. on February 14, 2017, and the other at 11:10 P.M.  (Dkt. 249-4 at 1, 7–8.)

**C.**   **Search, Arrest, and Detention**

On the evening of February 14, 2017, Officer Nichols proceeded to Mr. Boyd's house and executed the search warrant along with Officers Nunemacher and Lacy, and Tipton County Sheriff's Deputy Farinella. (Dkt. 249-2 at 2; Dkt. 249-10 at ¶ 4; Dkt. 249-11 at ¶ 4; Dkt. 261-1 at

¶ 4.)  Officers Nunemacher and Lacy and Deputy Farinella knew that they were conducting the search pursuant to a warrant that Judge Lett had approved.  (Dkt. 249-10 at ¶ 10; Dkt. 249-11 at ¶ 4; Dkt. 261-1 at ¶ 4.)  Inside a brown dresser in Mr. Boyd's bedroom, Deputy Farinella found a plastic container containing a white, crystal-like substance and several items with a white, powdery residue, including a plastic bag, a glass pipe, and a digital scale.  (Dkt. 261-1 at ¶ 9.)

The officers arrested Mr. Boyd for possessing drug paraphernalia.  (Dkt. 249-2 at 12.)  Upon his return to the police station, Officer Nichols field tested the white crystal-like substance and the residue on the glass pipe and the digital scale.  *Id.*  All were positive for methamphetamine. *Id.*  Mr. Boyd was charged in state court with dealing methamphetamine, possessing methamphetamine and paraphernalia, and maintaining a common nuisance.  (Dkt. 249-1 at 1; Dkt. 261-5 at 1–4.)  Mr. Boyd was detained until March 3, 2017, at which point he was granted pretrial release. *See* Dkt. 261-2 at 2–4.  Six months later, Judge Lett issued an arrest warrant based on Mr. Boyd's violation of his pre-trial release conditions.  *Id.* at 5.  Judge Lett granted pretrial release again on December 4, 2017, then issued another arrest warrant after Mr. Boyd failed to appear in March 2018. *Id.* at 7–8.  Mr. Boyd remained in pretrial detention until September 2019. *Id.* at 19.

## D.   Motion to Suppress and Dismissal of Charges

On September 5, 2019—two weeks before his jury trial—Mr. Boyd moved to suppress evidence obtained in the search.  (Dkt. 261-2 at 18.)  Judge Lett held a hearing eight days later.  (Dkt. 168-1 at 4.) At the hearing, Mr. Boyd's attorney called Choi, who testified that he has been affected by bipolar disorder and severe memory deficits since the 1990s.  (Dkt. 168-1 at 6:19–23, 7:2–15.)  He could not remember whether he purchased drugs from Derek Boyd in February 2017, whether he was arrested for that transaction, whether he interacted with Officer Nichols, or whether he had been convicted of various prior offenses.  *See id.* at 7:23–8:19.

Mr. Boyd's attorney then called Officer Nichols and examined his efforts to corroborate Choi's statements or determine his trustworthiness before seeking the warrant.  Officer Nichols conceded that he did not try to corroborate Choi's testimony on February 14, 2017 before seeking the warrant and that he had been called to Choi's residence before and found him behaving abnormally. (Dkt. 168-1 at 12:21–13:2, 14:6–15:12.) He did not review Choi's criminal history, and he was not aware that Choi pled guilty ten years earlier to misdemeanor false informing.  *Id.* at 14:25–15:6; *see State of Indiana v. Ki Pil Choi*, no. 79D05-0709-CM-001787.

Mr. Boyd's attorney argued that the search warrant was invalid because Officer Nichols based his probable cause affidavit primarily on statements from Choi but provided no information that would allow Judge Lett to assess Choi's reliability as an informant.  (Dkt. 168-1 at 26:13–30:10.)  Judge Lett stated that he would likely deny the motion to suppress but wished to take some time to review it.  *Id.* at 34:17–22, 35:18–23.  However, before Judge Lett ruled on the motion to suppress, the state moved to dismiss Mr. Boyd's charges from the February 14, 2017 incident. (Dkt. 249-4 at 2; dkt. 261-2 at 19.)[3]

**E.     Body Camera Video**

Officer Nichols wore a body camera during his interactions with Choi and the search on February 14, 2017.  (Dkt. 168-1 at 13:21–24; Dkt. 249-2 at 12.)  He downloaded the body camera video to the TPD's storage device on February 15, 2017.  (Dkt. 213-1 at ¶ 5.)  No evidence documents what was depicted or recorded by the body camera.  The record also does not clearly document attempts by Mr. Boyd or defense counsel to obtain body camera evidence.  Mr. Boyd

---

[3] The basis for the dismissal is not explicit in the record. Mr. Rich stated in response to an interrogatory that, "[i]n the exercise of [his] prosecutorial discretion," he thought dismissing the charges "was the right and just thing to do."  (Dkt. 255-8 at 23.)  The Court notes that, in October 2018, while his criminal case in Tipton County was pending, Mr. Boyd pled guilty in Madison County to drug charges, for which he is currently serving his sentence. *See State of Indiana v. Derek L. Boyd*, no. 48C06-1709-F4-002348.

filed a *pro se* "motion of discovery" on May 6, 2019, but the state court docket text suggests that it concerned other evidence. *See* Dkt. 261-2 at 15 (describing motion to subpoena several individuals, jail phone records, and a Prison Rape Elimination Act complaint).

Officer Nichols attests that data on the TPD servers "becomes inaccessible" three years after it is uploaded unless action is taken to preserve it. (Dkt. 213-1 at ¶ 5.) There is no evidence that Officer Nichols' body camera data existed after February 15, 2020, three years from the upload date.

## III.   ANALYSIS: SUMMARY JUDGMENT MOTIONS

At screening, the Court identified three plausible claims in Mr. Boyd's Complaint. First, Officers Nichols, Nunemacher, and Lacy, Deputy Farinella, and Mr. Rich violated Mr. Boyd's Fourth Amendment rights by obtaining and then executing a search warrant they knew was not valid. Second, Officer Nichols and Mr. Rich violated Mr. Boyd's Fourth and Fourteenth Amendment[4] rights by arresting and then detaining him without probable cause. Finally, Officer Nichols and Mr. Rich violated Mr. Boyd's Fourteenth Amendment rights by withholding exculpatory evidence until after his charges were dismissed.

Viewing the evidence in the light most favorable to Mr. Boyd would not allow a reasonable jury to return a verdict in his favor. Accordingly, the Defendants are entitled to summary judgment.

---

[4] At screening, the Court identified claims alleging Mr. Boyd's wrongful arrest as proceeding under the Fourth Amendment and claims alleging his wrongful detention as proceeding under the Fourteenth. (Dkt. 13 at 3.) However, recent United States Supreme Court precedent makes clear that both claims derive from the Fourth Amendment. *See Kuri v. City of Chicago*, 990 F.3d 573, 575 (7th Cir. 2021) ("Before *Manuel v. Joliet*, 137 S. Ct. 911 (2017), many courts—including the Seventh Circuit—saw claims of wrongful detention pending trial as based on the Due Process Clause. . . . But *Manuel* held that the Fourth Amendment supplies the bases for a claim until the suspect is either convicted or acquitted.").

### A.    <u>Claims Based on Validity of Search Warrant</u>

The Fourth Amendment protects citizens against "unreasonable searches and seizures" by law enforcement officers.  A search may be unreasonable if it has been executed on the strength of a warrant obtained improperly; evidence recovered in the search may be suppressed, and the officers responsible may be liable for damages.  *See, e.g.*, *Taylor v. Hughes*, 26 F.4th 419, 426–27 (7th Cir. 2022) (discussing consequences of obtaining a warrant by presenting false statements knowingly, intentionally, or with reckless disregard for the truth); *United States v. Glover*, 755 F.3d 811 (7th Cir. 2014) (remanding action for hearing on whether officer omitted critical information in warrant application).  Mr. Boyd contends that the search of his home was enabled by a warrant that never should have been issued and that it was therefore unconstitutional.

### 1.    <u>Legal Standard: Warrants Based on Statements of Informants</u>

"A warrant is valid under the Fourth Amendment only where it is based 'upon probable cause, supported by Oath or affirmation, and particularly describ[es] the place to be searched, and the persons or things to be seized.'"  *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000) (quoting U.S. Const. amend. IV).  Mr. Boyd contends that the Defendants violated the Fourth Amendment by searching his home on authority of a warrant obtained with an insufficient affidavit and therefore without probable cause.

"In determining the sufficiency of a warrant affidavit," a court must "focus on the totality the information presented to the" judge who issued it.  *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1056–57 (7th Cir. 2018).  The court may consider only "'what the officer knew at the time he sought the warrant, not . . . how things turned out in hindsight.'"  *Id.* at 1057 (quoting *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003).  "The law affords 'great deference' to the probable cause finding made by the judge who evaluated the warrant application in the first

instance, and" a reviewing court "will uphold that determination so long as there is a 'substantial basis' for concluding 'that a search would uncover evidence of wrongdoing.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

Mr. Boyd argues that Officer Nichols' affidavit was constitutionally insufficient because it relied almost entirely on testimony from an unreliable informant and because it did not demonstrate that Officer Nichols took steps to verify the informant's trustworthiness or independently corroborate his testimony. In such cases, the court must determine the sufficiency of the officer's affidavit by examining "five primary factors, none of which is determinative by itself." *Edwards*, 907 F.3d at 1057. Those factors are:

1) the level of detail in the informant's statements;

2) the extent to which the informant's statements are based on firsthand observation;

3) the degree to which the informant's statements have been corroborated;

4) the time between the events the informant reported and the warrant application; and

5) whether the informant appeared or testified directly to the judge who issued the warrant.

*Id.* (citing *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014)).

**2.    Analysis: Validity of the Warrant**

As an initial matter, it is not clear that this case is governed by the five-factor test. The Seventh Circuit has long distinguished between information from *paid informants* and information from other witnesses, such as crime victims. *See United States v. Wilson*, 479 F.2d 936, 940 (7th Cir. 1973) ("The fact that Mayhaus was not a paid informer is significant."). When the basis of a victim's knowledge is clear, information he provides can "be presumed to be reliable." *United States v. Longmire*, 761 F.2d 411, 418 (7th Cir. 1985) (citing *Wilson*, 479 F.2d at 940). A report

based on the victim's "personal observation" is "less likely to be colored by self-interest" than a report from an informant. *Wilson*, 479 F.2d at 940 (quoting *Brown v. United States*, 365 F.2d 976, 979 (D.C. Cir. 1966)).

Choi was not a paid informer. No evidence suggests he received any benefit from telling Officer Nichols where, how, and from whom he bought the methamphetamine that required him to be hospitalized.[5] For this reason, Choi's statements could "be presumed to be reliable." *Longmire*, 761 F.2d at 418.

Even applying the more exacting standard for warrant applications based on information from paid informants, though, a majority of the factors weigh in favor of finding Officer Nichols' affidavit and the warrant valid. According to Officer Nichols, Choi described his transaction with Mr. Boyd in exacting detail, and the descriptions were based entirely on firsthand observations. Choi stated when he bought the methamphetamine that caused his overdose ("in the early evening hours on 2-14-17,") and where he bought it (at 444 North East Street, in Derek Boyd's bedroom). (Dkt. 168-1 at 18:23–19:4; Dkt. 249-2 at 6.) He stated that he bought the methamphetamine from Derek Boyd, who cut it from a rock that he removed from the top drawer of a brown dresser in his bedroom, then returned the rest of the rock to the top drawer. (Dkt. 168-1 at 18:23–19:4; Dkt. 249-2 at 6.) Even if the Court entertains "some doubt as to an informant's motives," such an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234.

---

[5] In fact, Officer Nichols testified previously that he charged Mr. Choi with possession of methamphetamine based on the February 14, 2017 incident. *See* Dkt. 196-1 at 6 (*State of Indiana v. Derek Boyd*, Cause No. 80C01-1702-F5-00088, dep. of Davin Nichols) ("I did file charges on Mr. Choi for possession of methamphetamine."). However, no party has supported its summary judgment motion with records of those charges.

Moreover, Choi reported his detailed, firsthand observations to Officer Nichols, who then relayed them to Judge Lett, all in the space of a few hours. Choi allegedly visited Mr. Boyd's home "in the early evening hours" of February 14, 2017. (Dkt. 249-2 at 6.) Officer Nichols was called to Choi's home "at approximately 7:38 P.M." *Id.* at 10. He prepared his affidavit and presented it to Mr. Rich, then to Judge Lett, and had a warrant in hand by 11:00 P.M. *Id.* at 8.

Finally, Officer Nichols noted in his affidavit that he found Choi's statements trustworthy *because* they were fresh, detailed, firsthand observations: "Officer Nichols believes that probable cause exists . . . based on the *first hand*, *personal observations* of Ki Pil Choi, providing *intimate*, *specific details*, *recent* in nature . . . ." (Dkt. 249-2 at 7 (emphasis added).)

There is no evidence Officer Nichols knew of Choi's chronic memory problems or his previous false reporting conviction when he sought his warrant from Judge Lett, so it is not as though he "hid[] from the issuing judge any known material facts adverse to" Choi's "credibility." *Taylor v. Hughes*, 26 F.4th 419, 427 (7th Cir. 2022). Plus, Officer Nichols had seen Choi behave abnormally in the past but found that he was lucid, "tracking" questions, and providing responsive answers on February 14, 2017, even in his state of distress. (Dkt. 168-1 at 12:25–13:2, 18:10–15, 19:13–21, 23:15–18; Dkt. 196-1 at 6.)

Theoretically, if not practically, Officer Nichols could have done more to investigate Choi and the trustworthiness of his statements. But the law does not entitle Mr. Boyd to recover damages because Officer Nichols' work was imperfect. Considering only the information Officer Nichols knew when he applied for the search warrant, viewing it in the light most favorable to Mr. Boyd, and affording any deference at all to Judge Lett's probable cause determination, any reasonable jury would conclude that there was a substantial basis for issuing the warrant. *Edwards*, 907 F.3d at 1057.

3.     **Additional Arguments: _Miranda_, the "Unsigned" Warrant, and Common Nuisance**

In addition to his principal argument regarding Choi's reliability, Mr. Boyd offers several challenges to the warrant that are more easily resolved.

First, Mr. Boyd argues extensively in his summary judgment briefing that the warrant was invalid because it was based on statements Choi made to Officer Nichols without being apprised of his _Miranda_ rights to avoid self-incrimination. _See_ Dkt. 275 (applying _Miranda v. Arizona_, 384 U.S. 436 (1966)). If Choi was prosecuted based on statements he made to Officer Nichols, perhaps he could raise _Miranda_ as a defense. But Mr. Boyd cannot prove a violation of his own Fourth Amendment rights by asserting a violation of Choi's Fifth Amendment rights. _See, e.g._, _Bellis v. United States_, 417 U.S. 85, 90 (1974) ("[T]he Fifth Amendment privilege is a purely personal one.").

Second, Mr. Boyd has maintained since he filed this action that the warrant authorizing the search of his home was unsigned. _See_ Dkt. 1-1 at 2. But the Defendants have introduced signed warrants, _see_ Dkt. 249-4 at 7–8, and Judge Lett has testified that he signed the warrants on February 14, 2017, _id._ at 2. Upon further examination, it appears that Mr. Boyd received an unsigned copy of the warrant in discovery. _See_ Dkt. 183 at 5; Dkt. 255-8 at 21. That fact does not counter the Defendants' admissible evidence that Judge Lett signed the warrant before it was executed on February 14, 2017.

Finally, Mr. Boyd argues that the warrant must be invalid because he was charged with "visiting" (rather than "maintaining") a common nuisance, implying Officer Nichols lied when he stated in the warrant application that he knew Mr. Boyd resided at 444 North East Street. _See_ Dkt. 284 at 3. But Mr. Boyd is mistaken, he was charged with maintaining—not visiting—a common nuisance. (Dkt. 261-5 at 3 ("Information Charging Maintaining a Common Nuisance").)

The Defendants are entitled to summary judgment on all claims based on the validity of the search warrant.

## B.   <u>Claims Based on Arrest and Detention</u>

Mr. Boyd argues that following the search of his home, he was arrested and then detained without probable cause. "The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (cleaned up) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Likewise, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114.

Mr. Boyd's arrest and detention were supported by the extensive evidence of drug trafficking found during the search of his home: a plastic container containing a white, crystal-like substance and several items with a white, powdery residue that tested positive for methamphetamine, including a plastic bag, a glass pipe, and a digital scale. (Dkt. 249-2 at 12; Dkt. 261-1 at ¶ 9.) This evidence would justify a prudent person in believing that Mr. Boyd possessed and sold methamphetamine from his home in February 2017.  *Gerstein*, 420 U.S. at 111.

Mr. Boyd states that the items found in his home did not contain measurable quantities of methamphetamine, that there was "no chain of custody paperwork" maintained with the evidence, and that the officers "fabricat[ed]" the evidence of methamphetamine.  *See* Dkt. 272 at ¶¶ 8–10. He supports none of his statements with evidence.  And although Mr. Boyd affirms his statements under penalties of perjury, he does not state how he knows, for example, that there was no measurable methamphetamine in his home and that the officers fabricated it.  *See* Fed. R. Evid.

602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter.").

Mr. Boyd also alleges that either Deputy Farinella or an informant working for Deputy Farinella planted the scale in his bedroom. (Dkt. 273 at 2–4; Dkt. 274 at 4.) Again, Mr. Boyd provides no evidence to support his claims or establish how he personally knows that Deputy Farinella worked with an informant or planted evidence. Regardless, this argument does not account for the other evidence of drug activity found in the search.

In short, extensive evidence demonstrates that Mr. Boyd's arrest and detention were supported by probable cause. No admissible evidence shows otherwise. The Defendants are entitled to summary judgment on claims based on Mr. Boyd's arrest and detention.

## C.    _**Brady** Claims_

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." _Brady v. Maryland_, 373 U.S. 83, 87 (1963). "Subsequent decisions make plain that this precept translates into an affirmative duty to disclose to defendants all potentially exculpatory evidence, including impeachment evidence." _Anderson v. City of Rockford_, 932 F.3d 494, 504 (7th Cir. 2019).

Mr. Boyd maintains that the Defendants violated _Brady_ by withholding two pieces of evidence—the search warrant and Officer Nichols' body camera data—for over two years while he was jailed and his charges remained pending. "A plaintiff must show three elements in order to prove a _Brady_ violation." _Goudy v. Cummings_, 922 F.3d 834, 838 (7th Cir. 2019). First, "the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching." _Id._ Second, "the evidence must have been suppressed by the state, either willfully

15

or inadvertently." *Id.* And, third, "the evidence must have been material, meaning there is a reasonable probability that the result of the proceeding would have been different."

### 1.   **Favorability and Materiality**

As the plaintiff, Mr. Boyd faces the burden of demonstrating that the evidence underlying his *Brady* claim was favorable and material.  *See, e.g.*, *Anderson*, 932 F.3d at 504 ("To prevail on a civil *Brady*-based due process claim . . . , *a plaintiff must demonstrate* that the evidence in question was favorable to him . . . and prejudice ensued because the suppressed evidence was material.") (emphasis added).  He has not met that burden.

As the Court discussed exhaustively above, nothing in the search warrant or Officer Nichols' application detracted from the finding that there was probable cause to search Mr. Boyd's home.  Even now, more than two years into this civil action, Mr. Boyd's challenges to the search warrant have been based on Choi's poor memory, medical condition, and criminal record.  Neither the warrant nor the affidavit included any evidence that supported those attacks.

Of course, the body camera data was not preserved, so the Court cannot determine whether its images or sounds might have been favorable to Mr. Boyd.  For the same reason, Mr. Boyd has been unable to demonstrate to the Court—and he would be unable to demonstrate to a jury—what the data would have shown or that it was favorable and material.

At best, Mr. Boyd can demonstrate that the body camera evidence was *potentially* material and exculpatory.  He cannot say what was captured by the body camera.  But had he been able to review it, he *may* have found evidence demonstrating there was not probable cause to search his home or to arrest and detain him.  The failure to disclose such evidence is governed by *Arizona v. Youngblood*, 488 U.S. 51 (1988), rather than *Brady*.  *See Youngblood*, 488 U.S. at 57 ("[T]he Due Process Clause requires a different result when we deal with the failure of the State to preserve

evidentiary material of which no more can be said then that it could have been subjected to tests, the results of which might have exonerated the defendant."). Under *Youngblood*, a plaintiff must show not only that the prosecution failed to disclose evidence, but that it acted in *bad faith*. *Id.* For the reasons discussed below, Mr. Boyd cannot satisfy this standard.

### 2.    **Suppression**

As with favorability and materiality, it is Mr. Boyd's burden as the plaintiff to prove suppression. *See Anderson*, 932 F.3d at 504 ("To prevail on a *Brady*-based due process claim . . . , *a plaintiff must demonstrate* that . . . the police 'suppressed' the favorable evidence . . . ."). It is not the Defendants' burden to prove that the warrant and body camera data were delivered to Mr. Boyd and his counsel during the prosecution. To avoid summary judgment, Mr. Boyd must present evidence from which a jury could reasonably conclude that the Defendants *withheld* material, exculpatory evidence.

The essence of Mr. Boyd's *Brady* argument is as follows: "On 8-3-2018 after failed attempts of Tipton Public Defender to obtain the body camera footage, a motion for all exculpatory evidence was filed by Plaintiff. It never was produced despite the Prosecutor dragging the case out until 9-17-2019." (Dkt. 196 at 3–4.)

Mr. Boyd was represented by counsel throughout his criminal proceeding. Judge Lett appointed Justin Clouser ("Mr. Clouser") to represent Mr. Boyd at the February 17, 2017 initial hearing. (Dkt. 261-2 at 2.) Mr. Clouser withdrew on September 10, 2018, and Craig Dechert (""Mr. Dechert") appeared the following day. *Id.* at 10–11. Any conclusion that Mr. Clouser and Mr. Dechert failed to review the warrant and the body camera data would be based on speculation and suspicion—not evidence. Mr. Boyd has not presented evidence that he has personal knowledge of their efforts to obtain the warrant or the body camera data. Moreover, letters from Mr. Dechert

do not suggest that he had any difficulty obtaining or reviewing evidence.  *See* Dkt. 219-1 at 5 ("I do not recall an issue with a DVD . . . ."); Dkt. 219-2 at 13 ("I've enclosed herein the warrant signed by Judge Lett on February 14, 2017.").

In any event, "[e]vidence cannot be regarded as 'suppressed' by the government when the defendant has access to the evidence before trial by the exercise of reasonable diligence." *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992).  Neither the warrant nor the body camera evidence were secret.  Indeed, Officer Nichols explicitly referenced both in his arrest report. (Dkt. 249-1 at 2–3.)  From the very beginning of Mr. Boyd's criminal case, Mr. Boyd's attorneys should have known that the warrant and the body camera evidence existed.  *See United States v. Shields*, 789 F.3d 733, 747 (7th Cir. 2015) ("Mr. Shields has failed to demonstrate that any evidence was suppressed by the Government. The lawsuit, and its settlement, have been publicly available since 2004."); *Harris v. Kuba*, 486 F.3d 1010, 1015–16 (7th Cir. 2007) ("The evidence of the Mexico City Café victim's identification of Harris and Chamberlain's confession were therefore available to Harris and his counsel with minimal research or discovery through the exercise of reasonable diligence.").  No admissible evidence supports a conclusion that Mr. Boyd's attorneys' made reasonably diligent efforts to obtain the evidence that the prosecution stymied.

Finally, because Mr. Boyd can show at most that the body camera data was *potentially* exculpatory, he would have to show that the Defendants suppressed the evidence in bad faith. *Youngblood*, 488 U.S. at 57.  In other words, Mr. Boyd cannot prevail just by showing that the Defendants did not hand over the body camera evidence.  Rather, he must show that they "made a 'conscious effort to suppress'" the evidence.  *Jones v. York*, 34 F.4th 550 (7th Cir. 2022) (slip op.) (quoting *United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000)).  Mr. Boyd has

asserted only that the Defendants did not provide the body camera evidence.  He has not presented admissible evidence that they made a conscious effort to withhold it from him or his attorneys.

Accordingly, the Defendants are entitled to summary judgment on Mr. Boyd's *Brady* claims.

### IV.   AMENDED MOTION FOR SPOLIATION OF EVIDENCE SANCTIONS

In addition to summary judgment, Mr. Boyd seeks sanctions against the Defendants for failing to preserve Officer Nichols' body camera evidence.  "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may issue sanctions. Fed. R. Civ. P. 37(e).  If the court finds that a party has been prejudiced by another's failure to preserve electronically stored information, the court "may order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  If the court finds that one party "acted with the intent to deprive another party of the information's use in the litigation," the court may "presume that the lost information was unfavorable to the party" responsible for its loss or "instruct the jury that it may or must presume the information was unfavorable to" that party.  Fed. R. Civ. P. 37(e)(2).

A spoliation sanction is "proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).  Even if a party destroys evidence in violation of a duty to preserve it, the court may only presume it was unfavorable to a party if the party acted in bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) ("Nevertheless, his opponent did not show bad faith . . . so no adverse inference instruction could issue."). "A party destroys a document in bad faith when it does so 'for the purpose of hiding adverse information.'" *Id.* (quoting

*Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008)).   "If, being sensitive to the possibility of a suit, a company then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence."  *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 272 (7th Cir. 1993).

There is no dispute that the body camera evidence was not preserved beyond February 15, 2020.  All the evidence in the record indicates that Officer Nichols downloaded the body camera video to the TPD's storage device on February 15, 2017, and that it automatically deleted on February 15, 2020, according to the TPD's regular protocol.  (Dkt. 213-1 at ¶ 5.)  Mr. Boyd filed this lawsuit approximately two months later.

The Court cannot conclude that Mr. Boyd was prejudiced by the Defendants' failure to preserve the video beyond the three years it remained in the TPD's system.  As the Court noted in discussing Mr. Boyd's *Brady* claims, no evidence explains what was captured on the body camera. Perhaps it showed that Choi's statements were different than what Officer Nichols reported in his warrant application or that the officers did not execute the warrant properly.  But on the record before the Court, it is just as likely that the body camera data was consistent with Officer Nichols' reports. The record shows that the body camera recorded evidence that *may* have been favorable to Mr. Boyd.  That is not the same as showing that Mr. Boyd was definitely prejudiced by the failure to preserve the evidence.

If Mr. Boyd was prejudiced by the Defendants' failure to preserve the body camera data for more than three years, he still has presented no admissible evidence of bad faith, and the Court therefore cannot presume for purposes of summary judgment that the evidence would have been favorable to him.  As noted above, the record would allow a jury to infer that Mr. Boyd's defense attorneys were able to access the body camera evidence while the criminal case was pending.

Mr. Boyd has not described any efforts to obtain the data between the dismissal of his criminal case in 2019 and his filing of this action in April 2020.  The only evidence in the record that speaks to the evidence's destruction indicates that it automatically deleted according to the TPD's regular practice—not because any party attempted to prevent Mr. Boyd from obtaining evidence favorable to his claims.  *Bracey*, 712 F.3d at 1019.

Mr. Boyd's motion for spoliation sanctions fails.

## V.  <u>MOTION FOR RULE 11 SANCTIONS</u>

Finally, Mr. Boyd seeks sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.  Rule 11(b) alerts lawyers and *pro se* litigants that, when they file papers with the Court, they certify that they are filed for a proper purpose; that they are supported by a nonfrivolous legal argument; and that their factual representations and denials are (or soon will be) supported by evidence.  Rule 11(c) provides that lawyers and litigants may be sanctioned for violating Rule 11(b).  Meanwhile, § 1927 allows the Court to hold attorneys personally liable for costs of multiplying the proceedings in any case "unreasonably and vexatiously."

Mr. Boyd's motion begins by stating that his Complaint and the attachments to it "had all the needed case law, document's [*sic*] to defeat the defendant's [*sic*]."  (Dkt. 285 at 2.)  Mr. Boyd is not certain "[e]xactly how many filings are frivolous," but he asserts that every filing "from Dkt. 50 to current, are improper."  *Id.* at 4.  The filing at Dkt. 50 is the Court's entry denying the Defendants' motions to dismiss, and it was docketed October 30, 2020.

Mr. Boyd's premise—that his case was so ironclad from the moment he filed his complaint that *any* effort to oppose it was frivolous—is not realistic.  As the remainder of this Entry makes clear, the Defendants' opposition to Mr. Boyd's claims has not only been nonfrivolous—it has been meritorious, and they are entitled to summary judgment.

The rest of Mr. Boyd's sanctions motion is difficult to follow. He appears to claim—for the first time—that Officer Nichols did not author the search warrant affidavit. (Dkt. 285 at 4.) If this is true, he suggests, the warrant was invalid, and he was unconstitutionally searched, arrested, and detained. In support of this argument, Mr. Boyd asks the Court to compare the handwriting and signatures on several documents.

Whether Officer Nichols actually drafted the search warrant affidavit is relevant—if at all—to the merits of Mr. Boyd's claims. Mr. Boyd did not raise this argument in his summary judgment briefing, so the Court need not dissect it. If the Court did entertain Mr. Boyd's handwriting arguments, it would have to begin with the issues of Mr. Boyd's personal knowledge of the handwriting in question, "whether testimony concerning the genuineness of a signature is properly the subject of expert opinion," *Deputy v. Lehman Bros.*, 345 F.3d 494, 509 (7th Cir. 2003), and how Mr. Boyd is qualified to offer such an opinion*, see* Fed. R. Evid. 602 (concerning the need for personal knowledge), 702 (concerning qualifications for expert witnesses). Mr. Boyd has provided no evidence relevant to these questions.

For purposes of the sanctions motion, though, Mr. Boyd's handwriting arguments are meritless. Officer Nichols provided an affidavit, sworn under penalty of perjury, declaring that he signed the search warrant affidavit at question in this case. (Dkt. 249-2 at 1–3.) His affidavit is admissible evidence, and defense counsel's factual contentions that he wrote and signed the warrant affidavit therefore have evidentiary support. Fed. R. Civ. P. 11(b)(3).

## VI.  CONCLUSION

For the reasons explained above, the Defendants' Motions for Summary Judgment, Dkts. [248], [252], and [260], are **GRANTED**. Mr. Boyd's Motion for Summary Judgment, Dkt. [196], and his Motions for Sanctions, Dkts. [183] and [285], are **DENIED**.

This action is **DISMISSED with prejudice**. The **Clerk is directed to enter final judgment** consistent with this Entry and the Screening Entry, (Dkt. 13).

**SO ORDERED.**

Date:  6/21/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Derek L. Boyd, #273507
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Alexander Robert Carlisle
OFFICE OF THE INDIANA ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Thomas Joseph Flynn
EICHHORN & EICHHORN, LLP
tflynn@eichhorn-law.com

Curtis Matthew Graham
FREEMAN MATHIS & GARY, LLP
cgraham@fmglaw.com

Stephen C. Keller
SCHILLER BARNES & MALONEY, PLLC
skeller@sbmkylaw.com

Gregory S. Loyd
gregory.loyd@atg.in.gov

Casey C. Stansbury
FREEMAN MATHIS & GARY, LLP
cstansbury@fmglaw.com